Jennifer POMMIER, Plaintiff,

v.

JAMES L. EDELSTEIN ENTERPRISES, a/k/a JLE Enterprises and formerly d/b/a Illinois Wine and Spirits; Federated Industries; Federated Distributors; Michael Shkoler; Michael Stenson and David Yenglin, Defendants.

No. 92 C 7685.

United States District Court,
N.D. Illinois, E.D.

March 9, 1993.

Opinion on Denial of Reconsideration
May 20, 1993.

---

Mary Stowell, Linda Debra Friedman, Leng, Stowell, Friedman & Vernon, Chicago, IL, for plaintiff.

Anne S. Knight, Korshak, Kracoff, Kong & Sugano, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Jennifer Pommier brings this sex discrimination action against her former employer, James L. Edelstein Enterprises ("JLE") a/k/a JLE Enterprises and formerly d/b/a Illinois Wine and Spirits, its successor in interest, Federated Industries ("Federated"), and three of her former supervisors, Michael Shkoler, Michael Stenson and David

Yenglin. Presently before the court is defendants' motion to dismiss or strike certain portions of Pommier's complaint. The motion presents the following issues: (1) whether Pommier may maintain an action under Title VII of the Civil Rights Act of 1964, as amended, against Shkoler, Stenson and Yenglin despite that none of these parties were named as respondents in the EEOC charge; (2) whether Pommier may sue Yenglin for violations of the Equal Pay Act in both his official and individual capacities; (3) whether Pommier's claim against JLE/Federated for intentional infliction of emotional distress is preempted by the Illinois Workers Compensation Act; (4) whether Count V states a claim for intentional infliction of emotional distress; and (5) whether Pommier may seek punitive and compensatory damages for alleged violations of Title VII. In connection with the first issue, the parties have submitted substantial materials outside the pleadings. Consequently, pursuant to Fed.R.Civ.P. 12(b), the court will treat separately that portion of the motion to dismiss or strike as a motion for summary judgment. For the reasons set forth below, we take the following action: (1) we grant summary judgment in favor of Shkoler, Stenson and Yenglin on Pommier's Title VII claims contained in Counts I, III and IV of her complaint; (2) we dismiss Count II of Pommier's complaint against Yenglin in his individual capacity; (3) we deny defendants' motion to dismiss Count V; and (4) we deny defendants' motion to strike Pommier's request for compensatory and punitive damages.

## I. BACKGROUND

This action stems from Pommier's employment with JLE, a predecessor of Federated, beginning August 18, 1986 and ending approximately September 30, 1991. During this time period, Pommier worked as a Purchasing Manager, Chain Sales Manager and Key Account Manager. Throughout the course of her employment, Pommier was allegedly subjected to repeated acts of sexual harassment. In response, Pommier filed an internal complaint. Far from remedying the situation, according to Pommier, she was confronted with fierce retaliation, including withholding of information necessary to perform her job, sabotaging programs she had implemented to ensure she would fail, and interfering with her customer contacts in order to ruin her professional reputation and credibility. Pommier also asserts that as a Purchasing Manager and Chain Account Manager, she was paid less money and bonus incentives than male employees who performed the same or comparable duties. In the same vein, Pommier was denied a company car, a benefit provided to other male employees who performed similar jobs. As a result of defendants' conduct, Pommier claims to have suffered from severe emotional distress. Pommier was forced to take a medical leave of absence from her job, during which time she was replaced.

On January 27, 1992, Pommier filed a charge of sex discrimination with the Equal Employment Opportunity Commission ("EEOC"). The charge named "JLE Enterprises & Federated Industries, Mike Shkoler, Mike Stenson & Dave Yenglin" as respondents. Pursuant to request by Mitchell Edison of the EEOC, on February 5, 1992, Pommier's attorney wrote a letter to Edison providing specific details as to the pattern and practice of sexual discrimination and harassment, unequal treatment and retaliation allegedly endured by Pommier. By letter dated February 20, 1992, the EEOC informed Pommier that the information she had provided was sufficient to begin processing her charge. Based on the representations contained in the letter, it appears that notice of the charge was served on JLE/Federated.

Unaccompanied by her attorney, Pommier was interviewed by an EEOC investigator on March 11, 1992. In conjunction with this interview, Pommier provided a detailed affidavit supporting her allegations against both the corporate and individual defendants. Pursuant to EEOC policy and practice, the investigator required Pommier to sign a recomposed charge of discrimination. At that time, the Chicago District Office of the EEOC had a practice to identify and name as respondents only the corporate employer, and not the individual supervisors alleged to have discriminated against the charging party. As such, the rewritten charge deleted all references to the Pommier's supervisors, i.e., Shkoler, Stenson and Yenglin. Further, the EEOC did not serve a copy of the charge on any of the individuals.

On August 28, 1992, the EEOC completed its investigation of the discrimination charge and notified Pommier of her right to institute a civil action. As required by statute, Pommier filed this action within ninety days of receiving her right-to-sue letter. Count I of her complaint charges JLE/Federated, Shkoler, Stenson and Yenglin with sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* In Count II, Pommier alleges that JLE/Federated and Yenglin violated the Equal Pay Act, 29 U.S.C. § 206(d)(1), by paying her a lower salary and fringe benefits than male employees in similar positions. Count III sets forth against all defendants a claim of sex discrimination in violation of Title VII. In Count IV, Pommier asserts that each defendant has violated both Title VII and the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3), by retaliating against her for filing internal sexual harassment and sexual discrimination charges. Finally, Count V charges all defendants with intentional infliction of emotional distress in violation of Illinois common law.

## II. DISCUSSION

Defendants' motion raises several challenges to Pommier's complaint. First, the individual defendants (Shkoler, Stenson and Yenglin) assert that they must be dismissed from those claims brought under Title VII of the Civil Rights Act of 1964 (Counts I, III and a portion of IV) because they were not named as respondents in the EEOC charge. Second, Yenglin requests that Count II of Pommier's complaint be dismissed against him in his individual capacity as it alleges actions taken only in his official capacity. Third, arguing that the claim is preempted by the Illinois Workers Compensation Act, JLE/Federated prays that it be dismissed from Count V. Additionally, all defendants contend that Count V fails to state a claim for intentional infliction of emotional distress. Finally, JLE/Federated moves this court to strike Pommier's request for punitive and compensatory damages for alleged violations of Title VII. We address each issue seriately.

## A. MOTION FOR SUMMARY JUDGMENT

### 1. Standard of Review

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas,* 929 F.2d 1210, 1212 (7th Cir.1991).

### 2. Respondents Named in the EEOC Charge

 Ordinarily, a party not named as a respondent in an EEOC charge may not be sued in a Title VII action. 42 U.S.C. § 2000e–5(f)(1); *Schnellbaecher v. Baskin Clothing Co.,* 887 F.2d 124, 126 (7th Cir. 1989); *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,* 657 F.2d 890, 905 (7th Cir.1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982); *Le Beau v. Libbey–Owens–Ford Co.,* 484 F.2d 798, 799 (7th Cir.1973). This administrative filing requirement serves a two-fold purpose: (1) to notify the charged party of the alleged violation; and (2) to afford that party an opportunity to participate in conciliation and to comply voluntarily with Title VII. *See Schnellbaecher,* 887 F.2d at 126; *Eggleston,* 657 F.2d at 905; *Stephenson v. CNA Fin. Corp.,* 775 F.Supp. 238, 239 (N.D.Ill.1991). Nonetheless, it is not a jurisdictional prerequisite. *Perkins v. Silverstein,* 939 F.2d 463, 469–70 (7th Cir.1991). Rather, the requirement is comparable to a statute of limitations, and is subject to equitable modification. *Id.* at 470. To be sure, courts consistently recognize an exception to

the general rule where the unnamed party or parties had adequate notice of the charge, and had an opportunity to participate in conciliation. *Schnellbaecher*, 887 F.2d at 126; *Eggleston*, 657 F.2d at 905; *see also Feng v. Sandrik*, 636 F.Supp. 77, 81 (N.D.Ill.1986). Additionally, courts consider whether strictly holding a plaintiff to the filing requirement could deprive her of redress of any legitimate grievances. *Eggleston*, 657 F.2d at 907 (citing *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir.1977)); *Stephenson*, 775 F.Supp. at 239; *Feng*, 636 F.Supp. at 81.

■ Whether a party has been named as a respondent in an EEOC charge typically is a straightforward question. The instant case is the exception. Complicating our inquiry is that Pommier effectively filed two charges of discrimination, the first dated January 27, 1992 and the second March 11, 1992. The first charge clearly named Shkoler, Stenson and Yenglin as respondents. However, through no fault of Pommier, this charge was not served on any of the named respondents. Standing in the way of Pommier's desire to proceed against her individual supervisors was an established EEOC policy to name only the charging party's corporate employer. Pursuant to this policy, an EEOC investigator forced Pommier to sign a recomposed charge, such charge deleting all references to Shkoler, Stenson and Yenglin. As with the first charge, the rewritten charge was not served upon the individual defendants.

Although yet to be addressed by the Seventh Circuit, at least three courts within this district have confronted a Title VII claim brought against an individual named in the plaintiff's initial charge of discrimination, but not in the charge as rewritten and issued by the EEOC. The results were mixed. *Compare McMullin v. Harrole*, No. 91–20151, 1992 WL 184283, 1992 U.S.Dist. LEXIS 11409 (N.D.Ill. Apr. 10, 1992) (Roszkowski, J.) (dismissing unnamed party); *Mufich v. Commonwealth Edison Co.*, 735 F.Supp. 897 (N.D.Ill.1990) (Bua, J.) (same) *with Torretto v. I.B. Diffusion, L.P.*, No. 92–2758, 1992 WL 345048, 1992 U.S.Dist. LEXIS 17333 (N.D.Ill. Nov. 10, 1992) (Plunkett, J.) (allowing suit against unnamed party). Defendants attempt, not without some force, to reconcile these differing opinions on the basis of

whether the unnamed parties were provided sufficient notice of the charge and an opportunity to participate in the conciliation process. Indeed, unlike the unnamed parties in *McMullin* and *Mufich*, the unnamed party in *Torretto* filed an appearance in response to the EEOC charge, from which we can infer adequate notice and an opportunity to take part in the conciliation proceedings. *Torretto*, 1992 WL 345048 at *3, slip op. at *11.

This court, however, need not determine if Shkoler, Stenson and Yenglin received adequate notice and an opportunity to partake in EEOC conciliation proceedings. Indeed, even if the individual defendants had received adequate notice and an opportunity to participate in conciliation, Pommier nonetheless would be precluded from holding her supervisors personally liable for the alleged Title VII violations. As such, we cannot excuse the failure to name the individuals as respondents in the charge of discrimination as issued, despite the fact that such failure may be attributable solely to the EEOC policy. *Cf. Stephenson*, 775 F.Supp. at 240 (no equitable modification of filing requirement where prevailing plaintiff may receive full measure of relief against remaining corporate defendant).

Title VII prohibits "employers" from discriminating against individuals on the basis of "race, color, religion, sex or national origin." 42 U.S.C. §§ 2000e–2(a), (b). As defined by the statute, an "employer" is "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year, *and any agent of such person....*" *Id.* § 2000e(b) (emphasis supplied). To date, the Seventh Circuit has yet to address the question of whether individual supervisory or management level officers are "employers" within the meaning of Title VII. The varying responses of other courts are detailed in *Bertoncini v. Schrimpf*, 712 F.Supp. 1336 (N.D.Ill.1989), and will not be repeated here. The only court within this district to address the issue has held that such supervisors are not "employers" against whom a Title VII action may be maintained in their individual capacities. *Weiss v. Coca–Cola Bottling Co.*, 772 F.Supp. 407, 410–11 (N.D.Ill.1991) (Duff, J.). The court in *Weiss* reasoned that, to the

extent that such a supervisor is an "agent" of the employer, such individual stands only as a surrogate for the employer and, hence, may only be held liable in their official capacity. *Id.* at 411. This result is bolstered by the fact that the remedies available under Title VII (prior to the 1991 amendment) are remedies which an employer, not an individual, would generally provide—*i.e.*, back-pay, reinstatement and other equitable relief if warranted. *Id.* Thus, from the prevailing plaintiff's perspective, the supervisor is an unnecessary party to the Title VII action as the full measure of available relief is generally obtainable against the remaining corporate defendant. Such is the circumstance in the present case. Finding persuasive the analysis set forth in *Weiss,* we grant summary judgment in favor of Shkoler, Stenson and Yenglin on Pommier's Title VII claims contained in Counts I, III and IV of her complaint.

### B. MOTION TO DISMISS

#### 1. Standard of Review

■ A motion to dismiss should not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Beam v. IPCO Corp.,* 838 F.2d 242, 244 (7th Cir.1988); *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). We take the "well-pleaded allegations of the complaint as true and view them, as well as reasonable inferences therefrom, in the light most favorable to the plaintiff." *Balabanos v. North Am. Inv. Group, Ltd.,* 708 F.Supp. 1488, 1491 n. 1 (N.D.Ill.1988) (citing *Ellsworth* ).

#### 2. Equal Pay Act (Count II)

■ The Equal Pay Act provides in pertinent part:

No *employer* ... shall discriminate ... between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility....

29 U.S.C. § 206(d)(1) (1988). The definition of the term "employer" within the context of the Equal Pay Act is identical to that used within the statutory framework of Title VII. *See Weiss,* 772 F.Supp. at 412. As discussed above, to the extent that Pommier has made any allegations against Yenglin, they are directed to actions taken as an agent of JLE/Federated. Consequently, he cannot be held personally liable for whatever responsibility he may have had for an Equal Pay Act violation. As such, we dismiss Count II of Pommier's complaint against Yenglin in his individual capacity.

#### 3. Intentional Infliction of Emotional Distress (Count V)

Count V of Pommier's complaint alleges intentional infliction of emotional distress on the part of all defendants. JLE/Federated now contends that, assuming Count V states a cause of action, it is nonetheless barred by the exclusivity clauses of the Illinois Workers Compensation Act. We disagree.

■ As a *quid pro quo* for an employer's assumption of liability without fault, the Illinois Workers Compensation Act provides:

No common law or statutory right to recover damages from the employer ... or the agents or employees of ... [the employer] for injury or death sustained by an employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act....

Ill.Rev.Stat. ch. 48, ¶ 138.5(a) (1987). In a similar vein, Section 11 of the Act states:

The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer ... for accidental injuries sustained by any employee arising out of and in the course of the employment according to the provisions of this Act....

Ill.Rev.Stat. ch. 48, ¶ 138.11 (1987). The import of these sections is to bar an employee from bringing a common law cause of action against her employer unless the employee demonstrates: (1) that the injury was not accidental; (2) that the injury did not arise from her employment; (3) that the injury was not received during the course of employment; or (4) that the injury was not compensable under the Act. *Meerbrey v. Marshall Field & Co.,* 139 Ill.2d 455, 463, 151 Ill.Dec. 560, 564, 564 N.E.2d 1222, 1226 (1990); *Collier v. Wagner Castings Co.,* 81 Ill.2d 229, 237, 41 Ill.Dec. 776, 780, 408 N.E.2d 198, 202 (1980).

In the instant case, whether Pommier may maintain an action for intentional infliction of emotional distress against JLE/Federated turns on whether her injuries were "accidental" within the meaning of the Act. The Illinois courts have determined that the term "accidental" as employed by the Act is not " 'a technical legal term but encompasses anything that happens without design or an event which is unforeseen by the person to whom it happens.' " *Meerbrey*, 139 Ill.2d at 464, 151 Ill.Dec. at 564, 564 N.E.2d at 1226 (quoting *Pathfinder Co. v. Industrial Comm'n*, 62 Ill.2d 556, 343 N.E.2d 913 (1976)). As such, Illinois courts routinely hold that injuries intentionally inflicted upon an employee by a co-employee are "accidental" in that such injuries are unexpected and unforeseeable from the injured employee's point of view. *Id.* (citing *Collier*, 81 Ill.2d at 238, 41 Ill.Dec. at 780, 408 N.E.2d at 202). Likewise, "[s]uch injuries are ... accidental from the employer's point of view, at least where the employer did not direct or expressly authorize the co-employee to commit the assault." *Id.* Consequently, as injuries intentionally inflicted by a co-worker are "accidental" within the meaning of the Act, the exclusivity provisions will bar a common law cause of action against an employer stemming from such injuries. *Id.* (citing *Collier*, 81 Ill.2d at 239, 41 Ill.Dec. at 780–81, 408 N.E.2d at 202–03; 2A A. Larson, *Law of Workmen's Compensation* § 68.21 (1988)).

However, where an employer does direct or expressly authorize the injury in question, such injury may no longer be considered "accidental" and the employer cannot expect that the employee's sole remedy will stem from the Workers Compensation Act. *Zakutansky v. Bionetics Corp.*, 806 F.Supp. 1362, 1367 (N.D.Ill.1992) (interpreting Illinois law); *Meerbrey*, 139 Ill.2d at 464, 151 Ill.Dec. at 564, 564 N.E.2d at 1226; *Collier*, 81 Ill.2d at 239–40, 41 Ill.Dec. at 781, 408 N.E.2d at 203; *Fitzgerald v. Pratt*, 223 Ill.App.3d 785, 786–89, 166 Ill.Dec. 200, 202–03, 585 N.E.2d 1222, 1224–25 (5th Dist.), *appeal denied*, 144 Ill.2d 632, 169 Ill.Dec. 141, 591 N.E.2d 21 (1992); *Johnson v. Federal Reserve Bank of Chicago*, 199 Ill.App.3d 427, 432–34, 145 Ill. Dec. 558, 561–62, 557 N.E.2d 328, 331–32 (1st Dist.), *appeal denied*, 133 Ill.2d 558, 149 Ill. Dec. 323, 561 N.E.2d 693 (1990). The rationale driving this rule is apparent: "the employer should not be permitted to assert that the injury was 'accidental,' and therefore under the exclusive provisions of the Act, when he himself committed the Act." *Meerbrey*, 139 Ill.2d at 464, 151 Ill.Dec. at 564, 564 N.E.2d at 1226 (citing *Jablonski v. Multack*, 63 Ill.App.3d 908, 20 Ill.Dec. 715, 380 N.E.2d 924 (1st Dist.1978)).

Although not a model of clarity, the complaint does allege that JLE/Federated intentionally caused Pommier severe emotional distress. Complaint ¶¶ 25, 52. Further, in her responsive brief, Pommier specifically states that JLE/Federated is named as a defendant in Count V based on its intentional (as contrasted with merely respondeat superior, ascribed conduct) infliction of emotional distress, *i.e.*, that JLE/Federated directed or expressly authorized the injury. Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss at 10. While the allegations of the complaint may be inadequately vague, the additional assertion in Pommier's brief is sufficient to withstand the motion to dismiss. *See Hrubec v. National R.R. Passenger Corp.*, 981 F.2d 962, 963–64 (7th Cir.1992) (Although a Rule 12(b)(6) motion is generally tested against the complaint itself, "[a] plaintiff need not put all of the essential facts in the complaint. He may add them by affidavit or brief—even a brief on appeal.").

Having concluded that Count V is not preempted by the Illinois Workers Compensation Act, we turn to consider whether that count states a cause of action. In order to state a cause of action for intentional infliction of emotional distress, Pommier must allege facts which establish: (1) that defendants' conduct was extreme and outrageous; (2) that the emotional distress she suffered was severe; and (3) that defendants knew that severe emotional distress was certain or substantially certain to result from such conduct. *McGrath v. Fahey*, 126 Ill.2d 78, 86, 127 Ill.Dec. 724, 727, 533 N.E.2d 806, 809 (1988); *Public Fin. Corp. v. Davis*, 66 Ill.2d 85, 90, 4 Ill.Dec. 652, 654, 360 N.E.2d 765, 767 (1976).

The allegations contained in Pommier's complaint detail the creation of a hostile work environment, in which Pommier was subjected to unwanted, intimidating and threatening sexual advances. As defendants

note, while such conduct may have been "inconsiderate, rude, vulgar, uncooperative, unprofessional and unfair," it does not rise to intentional infliction of emotional distress on its own. *See Miller v. Equitable Life Assur. Society,* 181 Ill.App.3d 954, 957, 130 Ill.Dec. 558, 560, 537 N.E.2d 887, 889 (1st Dist.1989). Contrary to defendants' suggestion, however, the allegations of the complaint do not end here. Rather, Pommier alleges a pattern of retaliation by defendants in response to her internal complaint of sexual harassment. According to Pommier, upon filing the internal complaint, defendants withheld information necessary to perform her job, sabotaged programs she had implemented to ensure she would fail, and interfered with her customer contacts in order to ruin her professional reputation and credibility. Further, Pommier alleges that, after the filing of the complaint, the discriminatory treatment increased. As alleged, the retaliatory nature of defendants' conduct represents the type of extreme and outrageous conduct discussed in *McGrath. See Class v. New Jersey Life Ins. Co.,* 746 F.Supp. 776, 778–79 (N.D.Ill.1990) (interpreting Illinois law); *Johnson v. Federal Reserve Bank of Chicago,* 199 Ill.App.3d 427, 431–32, 145 Ill.Dec. 558, 560–61, 557 N.E.2d 328, 330–31 (1st Dist.), *appeal denied,* 133 Ill.2d 558, 149 Ill.Dec. 323, 561 N.E.2d 693 (1990). Respecting the second and third elements of the tort, there is no doubt that the injuries as alleged are "severe." Moreover, the outrageousness and duration of the alleged conduct supports Pommier's contention that defendants knew severe emotional distress was certain or substantially certain to result from such conduct.

In sum, this court finds that Pommier has alleged facts which, if proven, state a cause of action against all defendants for intentional infliction of emotional distress. Accordingly, defendants' motion to dismiss Count V is denied.

4. Compensatory and Punitive Damages

■ Although her complaint contains five separate counts, Pommier included only one prayer for relief. This is problematic in that she seeks compensatory and punitive damages—relief not available under each count. Defendants request that this court strike Pommier's request for compensatory and punitive damages because these remedies may

be recovered only by virtue of the newly amended Civil Rights Act of 1991, which applies only to discriminatory conduct occurring after November 21, 1991. Indeed, there is no dispute that the relevant conduct in this case occurred prior to November 21, 1991. As such, compensatory and punitive damages are not available on Pommier's Title VII claims. *See Luddington v. Indiana Bell Telephone Co.,* 966 F.2d 225, 229–230 (7th Cir.1992), *petition for cert. filed* (Dec. 3, 1992); *Simon v. Ravenswood Hosp. Medical Center,* No. 92–3764, 1992 WL 209509 (N.D.Ill. Aug. 20, 1992). Nonetheless, compensatory and punitive damages are now available for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). *Travis v. Gary Community Mental Health Center, Inc.,* 921 F.2d 108, 111–12 (7th Cir. 1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 60, 116 L.Ed.2d 36 (1991). Were Pommier to prevail on her FLSA claim contained in Count IV of her complaint, she may receive compensatory and punitive damages. Accordingly, defendants' motion to strike is denied.

### III. CONCLUSION

For the reasons set forth above, this court (1) grants summary judgment in favor of Shkoler, Stenson and Yenglin on Pommier's Title VII claims contained in Counts I, III and IV of her complaint; (2) dismisses Count II of Pommier's complaint against Yenglin in his individual capacity; (3) denies defendants' motion to dismiss Count V; and (4) denies defendants' motion to strike Pommier's request for compensatory and punitive damages. It is so ordered.

MEMORANDUM OPINION AND ORDER

On March 9, 1993, this court (1) granted summary judgment in favor of defendants Michael Shkoler, Michael Stenson and David Yenglin on plaintiff Jennifer Pommier's Title VII claims contained in Counts I, III and IV of her complaint, and (2) dismissed Count II of Pommier's complaint against Yenglin in his individual capacity. See p. 484. In so doing, we held that neither Title VII nor the Equal Pay Act permits suit against corporate supervisors or management level officers in their individual capacities. *Id.,* at 480–482. Pommier now moves the court for reconsid-

eration of this legal issue and, as explained below, the motion is denied.

In support of her motion for reconsideration, Pommier cites *Marshall v. Allen*, 984 F.2d 787 (7th Cir.1993), and *Riordan v. Kempiners*, 831 F.2d 690 (7th Cir.1987), for the proposition that corporate supervisors and management level officers may be held liable in their individual capacities under Title VII and the Equal Pay Act. Pommier's reliance upon these cases, however, is misplaced.

In *Marshall*, the Seventh Circuit confronted an interlocutory appeal from a district court order denying summary judgment on a claim of qualified immunity. *Id.* at 789. In denying defendants' assertion of qualified immunity with respect to plaintiff's Title VII and Equal Pay Act claims, the district court reasoned:

> Since both statutes expressly define employers as including agents, it is doubtful that a Seventh Circuit decision was necessary to clarify established law. In any event, it is irrelevant to the determination of qualified immunity whether it was clearly established that supervisors could be held liable under the two statutes.... Defendants make no argument that the rights violated, that is the substantive provisions of Title VII and the Pay Act, were not clearly established as of the time of the alleged wrongdoing. Regardless of whether the individual defendants would have reasonably known they could be held personally liable under the two statutes, it was clearly established at the time that the two statutes applied to the CHA. Therefore, the established law would have made clear to the individual defendants that the actions they allegedly took were unlawful and not objectively reasonable in that they were acting in violation of the two statutes. Defendants' actions were objectively unreasonable even if they only thought they could be subjecting CHA to liability, not themselves as well.

*Marshall v. Chicago Housing Authority*, 1991 WL 66069, at *4, 1991 U.S.Dist.LEXIS 5291, at *11–12 (N.D.Ill. Apr. 18, 1991) (Hart J.). On appeal, plaintiff-appellee requested that the Seventh Circuit dismiss his Title VII and Equal Pay Act claims insofar as they sought relief from the individual defendants-appellants. *Marshall*, 984 F.2d at 793 n. 3. Absent an agreement among the parties on the matter of costs, the Seventh Circuit de-

nied the motion for voluntary dismissal. *Id.* Rather than address the merits of defendants-appellants' contention that supervisors may not be held personally liable under either Title VII or the Equal Pay Act, however, the court rejected defendants-appellants' arguments as beyond the limited scope of its appellate jurisdiction. *Id.* In the absence of a substantive discussion on the matter, we will not infer from the consequences of remand for trial in *Marshall* that the Seventh Circuit condones personal liability for corporate supervisors under either Title VII or the Equal Pay Act.

Likewise, the court in *Riordan* did not expressly hold that corporate supervisors may be held personally liable under the Equal Pay Act. To be sure, the court in *Riordan* did state that plaintiffs may name employees of the corporation under the Equal Pay Act, provided that the named employees had supervisory authority over the complaining employee. *Riordan*, 831 F.2d at 694. Nonetheless, the court did not distinguish between personal and official liability. And, Riordan was emphatic in insisting that his Equal Pay Act complaint was against the supervising employee in his official capacity. *Id.* at 694–95.

In sum, neither *Marshall* nor *Riordan* compels a holding that corporate supervisors may be held personally liable under either Title VII or the Equal Pay Act. That disagreement over this issue exists within the Northern District of Illinois is insufficient to warrant reconsideration in the instant case. Accordingly, Pommier's motion for reconsideration is denied. It is so ordered.